J. S53045/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| TERESA JOHNSON, | : | No. 1720 EDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, May 6, 2016,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0001076-2015

BEFORE:  BENDER, P.J.E., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED SEPTEMBER 11, 2017**

Teresa Johnson appeals from the judgment of sentence of May 6, 2016, following her convictions of one count each of aggravated assault, simple assault, possession of an instrument of a crime ("PIC"), and recklessly endangering another person ("REAP").[1]  We affirm.

The Honorable Daniel J. Anders, sitting as finder-of-fact in this non-jury case, has aptly summarized the facts as follows:

> 1.    [Appellant] assaulted Tammy Webb causing serious injury to her face and eye
>
> On January 25, 2015, Tammy Webb lived at 308 West Westcomb Street in Philadelphia. [Appellant] and her daughters Ranesha Johnson ("Ranesha") and Jasmine Johnson ("Jasmine") lived next to Webb at 310 West Westcomb Street.[Footnote 1]   At 7:30[ a.m.], Webb was

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a), 907(a), and 2705, respectively.

standing in her doorway when she observed Ranesha drive into a parking spot in front of her house. As Ranesha parked her vehicle, she scraped the vehicle of another neighbor. [Appellant] came out of her house and entered Ranesha's truck. Ranesha then drove off with [appellant].

> [Footnote 1] Ranesha Johnson and Jasmine Johnson were co-defendants in a matter that involved an altercation with Tammy Webb for which [appellant] Teresa Johnson was not charged. That matter was consolidated for trial along with a separate matter involving [appellant] Teresa Johnson and Tammy Webb. Following the waiver trial on both matters, the trial court entered a verdict of not guilty on all charges against Ranesha Johnson and Jasmine Johnson.

A few minutes after Ranesha and [appellant] left in their truck, Webb walked to her neighbor's house to let him know that Ranesha had scratched his vehicle with her truck. When she returned from talking to her neighbor, Webb observed Jasmine coming out of her house. As Webb started to walk up the steps to her own house, Jasmine came down her steps and put her hands in Webb's face. In response, Webb put her hands in Jasmine's face. A fight between Webb and Jasmine ensued. The fight ended after Webb's dogs came out of her house and went after Jasmine without biting her. Webb called 911 to report the altercation between her and Jasmine.

Fifteen minutes after calling 911, Webb observed [appellant] and Ranesha return to the block in Ranesha's truck. Ranesha jumped out of the truck and ran over to Webb's property. Ranesha kicked Webb's screen door and broke it. Ranesha also had a foot long brick in her hands. [Appellant] remained on the street as Ranesha ran onto Webb's steps and broke her screen door.

Eventually Philadelphia police officers arrived at Webb's house. The police officers took a report of the incident and instructed Webb to obtain a restraining order against [appellant], Ranesha and Jasmine. Webb went back inside her house to get dressed in order to go to 1501 Arch Street to obtain a restraining order. As Webb left her house to go to 1501 Arch Street, Ranesha was on her step waiting for Webb. Ranesha and Webb exchanged words, and then Ranesha attacked Webb from behind. When Ranesha attacked Webb, [appellant] was standing on the sidewalk. As Ranesha was fighting with Webb and punching her with a closed fist, Jasmine jumped out of [appellant]'s truck and joined the fight. At this point, both Jasmine and Ranesha were punching Webb with closed fists. Webb was swinging back at Jasmine and Ranesha to defend herself.

Jasmine and Ranesha stopped fighting with Webb only when Webb's daughter sprayed both of them with pepper spray. Webb then put her daughter into her car and told her son to get into the car. On cross-examination, Webb agreed that "there was a little bit of quiet" while she picked up her pocketbook and put her daughter into the car. As Webb's family was ready to leave for 1501 Arch Street, [appellant] yelled to Webb's daughter, "Lexis, we got something for you." Webb's son was standing between [appellant] and Webb. Unable to get to Webb because Webb's son was blocking her, [appellant] removed wooden, horizontal blinds that were in a nearby trashcan and stabbed Webb in the face with the blinds. When she stabbed Webb, [appellant] held the blinds with both hands and struck them in Webb's eye in a "jabbing motion downward." Although not noted in the transcript, the trial court recalls that the jabbing motion demonstrated by Webb was very quick and forceful.[Footnote 2]

[Footnote 2] In the main, Webb's daughter Alexis Webb testified consistently with Webb's description of

how [appellant] struck Webb with the blinds including that Ranesha's and Jasmine's fight with Webb was over when [appellant] struck Webb in the eye with the blinds.

The same police officers who responded to the first 911 call also responded to the second 911 call following Webb's injury. Webb was taken to Einstein Hospital where she received treatment for her injuries. Webb had emergency surgery to remove portions of the blinds that had broken off and were deeply embedded in her face and eye. Webb received 20 stitches. Webb's eye was so swollen that she could not see out of it for two weeks. Webb later received plastic surgery to address her injuries but still has a permanent scar above the eyebrow. Copies of Webb's injuries are collectively attached as Exhibit A.

During her interaction with [appellant], Jasmine and Ranesha, Webb never threatened them and did not have a weapon. Webb also testified that neither her son nor her daughter threatened [appellant], Jasmine or Ranesha and that neither of them had a weapon. On cross-examination, Webb denied that her son ever touched Jasmine including that her son threw Jasmine into a trash can.

2. [Appellant]'s Testimony At Trial

In relevant part, [appellant] testified that after Webb's daughter sprayed Jasmine and Ranesha with pepper spray, Webb yelled to [appellant], "That's what you B's get. Y'all belong in the trash. Y'all going to die. I'm going to burn up the house and kill everybody in it." In response, [appellant] told Webb that "her crackhead husband wasn't going to do anything to us." [Appellant] further testified that -- although Webb's son was trying to restrain Webb -- he was unable to prevent Webb from charging at [appellant]. In order to defend herself, [appellant] reached into a nearby trash can and grabbed blinds and "tossed" it at Webb. On cross-examination by

the prosecutor, [appellant] testified that she "threw" the blinds at Webb. The prosecutor described [appellant]'s reenactment of her throwing of the blinds as a "light throwing motion."

As part of [appellant]'s evidence, all parties stipulated that [appellant] has a reputation for being law-abiding, peaceful and non-violent.

### 3. [Appellant]'s 911 call to police

At trial, the prosecutor played a 911 call made by [appellant] to the police. In that telephone call, [appellant] states: "My neighbor just jumped my daughter. My daughter was just jumped three times. . . . I am on my way home now. I have been calling about this woman. Yes. And I will, and I'm going to f[] her up when I get there."

### 4. Trial Court's Credibility Determination

The trial court credited Webb's testimony, including that [appellant] jabbed Webb with the blinds with both hands and so hard that portions of the blinds broke off and embedded in Webb's eye and face. The trial court credited Webb's testimony based upon her demeanor, her manner of testifying, the consistency of her testimony, and the medical evidence of her injuries.

Trial court opinion, 11/18/16 at 1-4 (citations to the transcripts omitted).

On December 18, 2015, following a bench trial, appellant was found guilty of the above offenses. A bifurcated sentencing hearing was held on February 19, 2016 and May 6, 2016. Appellant was sentenced to 11½ to 23 months' incarceration for aggravated assault, with immediate parole, followed by 2 years of reporting probation. Appellant also received 4 years of probation for PIC and 2 years of probation for REAP. The charge of simple

assault merged. All of appellant's probationary sentences were run concurrently for an aggregate sentence of 11½ to 23 months' incarceration, with immediate parole, followed by 4 years' probation.[2] No post-sentence motions were filed. This timely appeal followed on June 4, 2016. Appellant complied with Pa.R.A.P. 1925(b), and the trial court has filed an opinion.

Appellant has raised the following issues for this court's review:

(1) Whether the evidence was sufficient to convict the Appellant of Aggravated Assault F1 where her only action was a reasonable reaction to being approached by the [sic] Webb who had engaged in multiple altercations with Appellant's daughters on the same morning of the incident, where Webb was extremely combative, where the Appellant remained at all times during all altercations on the pavement or in the street, and where the [sic] Webb stated in her "911" call, "that's what I wanted to happen[."] (Specifically track 16, Exhibit D15 at trial)?

(2) Whether the verdicts were against the weight of the evidence when the [sic] Webb was clearly the aggressor, attacking Appellant's daughters, constantly approaching the daughters, and refused to either enter her house and remain, or to avoid confrontation which resulted in a verdict contrary to the evidence and [which] shocks one's sense of justice?

Appellant's brief at 4.

---

[2] Appellant's sentence was below the mitigated range of the sentencing guidelines. (Notes of testimony, 5/6/16 at 13.)

In her first issue on appeal, appellant challenges the sufficiency of the evidence to support her conviction of aggravated assault. According to appellant, the Commonwealth failed to prove intent to cause serious bodily injury to Webb. Appellant also argues that Webb was the aggressor and charged at her. Appellant claims that she was simply trying to defend herself.

> We review Appellant's challenge to the sufficiency of the evidence under the following, well-settled standard of review:
>
>> A claim challenging the sufficiency of the evidence presents a question of law. ***Commonwealth v. Widmer***, 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." ***Commonwealth v. Hughes***, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." ***Id.***
>
> Our Supreme Court has instructed:
>
>> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

> Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. ***Commonwealth v. Ratsamy***, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

***Commonwealth v. Fortune***, 68 A.3d 980, 983-984 (Pa.Super. 2013) (***en banc***), ***appeal denied***, 78 A.3d 1089 (Pa. 2013), quoting ***Commonwealth v. Thomas***, 65 A.3d 939, 943 (Pa.Super. 2013).

Appellant was convicted of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1), which provides as follows:

> **(a)  Offense defined.--**A person is guilty of aggravated assault if he:
>
> (1)  attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1).  "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S.A. § 2301.

Here, Webb had emergency surgery to remove pieces of the window blinds that were embedded in her face.  She received 20 stitches.  (Trial court opinion, 11/18/16 at 3.)  Webb's eye was swollen shut for 2 weeks.

(**Id.**) Webb had plastic surgery to repair the damage but still has a permanent scar above her eyebrow. (**Id.**) This was sufficient to prove that Webb actually sustained serious bodily injury; therefore, the Commonwealth was not required to prove specific intent, only that appellant acted at least recklessly. **See Commonwealth v. Nichols**, 692 A.2d 181, 185 (Pa.Super. 1997) ("[W]here the victim suffers serious bodily injury, the Commonwealth need not prove specific intent. The Commonwealth need only prove appellant acted recklessly under circumstances manifesting an extreme indifference to the value of human life." (citations omitted)).

Appellant made a 911 call shortly before the incident, threatening Webb. (Notes of testimony, 12/10/15 at 129-131.) Later, after Webb had stopped fighting with appellant's daughters and was preparing to leave, appellant shouted, "Lexis, we got something for you," referring to Webb's daughter Alexis. Appellant then grabbed wooden blinds from a trashcan and stabbed Webb forcefully in the face and eye with a "jabbing motion." (**Id.** at 34-39, 86-90, 123-124.) Appellant jabbed Webb so hard with the wooden blinds that pieces of them broke off and had to be surgically removed from her eye and face. The trial court, sitting as fact-finder in this non-jury case, found Webb's description of the incident to be credible. (Trial court opinion, 11/18/16 at 7.) The trial court did not find appellant's testimony that she merely "lightly tossed" the blinds at Webb to be credible. (**Id.**)

Furthermore, appellant's argument that Webb was the aggressor and that appellant was defending herself and her daughters relies on appellant's own self-serving account of the incident which the trial court found unbelievable. Such credibility determinations are within the exclusive province of the fact-finder, in this case the trial court, and will not be disturbed on appeal. Examining all of the evidence in the light most favorable to the verdict winner, the Commonwealth, it was clearly sufficient to sustain appellant's conviction of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1).

Next, appellant challenges the weight of the evidence. However, from our review of the record, appellant failed to properly raise this issue in the trial court. Accordingly, appellant's weight claim is waived. Pa.R.Crim.P. 607(A); ***Commonwealth v. Lofton***, 57 A.3d 1270, 1273 (Pa.Super. 2012), ***appeal denied***, 69 A.3d 601 (Pa. 2013) ("[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." (citations omitted)); ***Commonwealth v. O'Bidos***, 849 A.2d 243, 252 (Pa.Super. 2004), ***appeal denied***, 860 A.2d 123 (Pa. 2004) (weight of the evidence claims must be raised via oral, written, or post-sentence motions in the trial court for the issue to be preserved for appeal (citations omitted)). ***See also*** Pa.R.A.P. 302(a)

("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Nor has appellant complied with Pa.R.A.P. 2117(c), stating how this issue was properly raised and preserved in the trial court. ***See Commonwealth v. Baker***, 963 A.2d 495, 502 n.5 (Pa.Super. 2008), ***appeal denied***, 992 A.2d 885 (Pa. 2010) ("If an appellant has properly preserved an issue for appellate review, the appellant must include in his or her brief a 'statement of the case' including a 'statement of place of raising or preservation of issues.' Pa.R.A.P. 2117(c). This information must also be referenced in the argument portion of the appellate brief. Pa.R.A.P. 2119(e)."). Furthermore, "it is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." ***Id.*** at 502 n.6 (citations omitted).

The record indicates that at the February 19, 2016 bifurcated sentencing hearing, appellant did present a motion for extraordinary relief, which was denied "without prejudice in filing an appropriate post-sentence motion that raises issues regarding the weight and the sufficiency of the evidence because there's no basis for an extraordinary relief." (Notes of testimony, 2/19/16 at 15.) The trial court explained that a weight of the evidence challenge should not be brought in a post-trial motion for extraordinary relief: "Motions for extraordinary relief are for extraordinary

circumstances only. It's where an error of law has been made where there's some fundamental miscarriage, not a weight of the evidence claim, which is what you're attempting to make, or even a mere sufficiency of the [evidence] claim." (*Id.* at 13.) "So the motion for extraordinary relief is denied without prejudice for you to refile an appropriate post-sentence motion once we go through with sentencing." (*Id.* at 16.)[3] Appellant did not file any post-sentence motions.

We also observe that appellant's "argument" on the weight claim is limited to the following sentence (not including recitation of the standard of review, conclusory statements of law, *etc.*): "Absence [sic] physical evidence when reviewed with the nature of [the] injuries, the Appellant was not attempting to kill the [sic] Webb." (Appellant's brief at 24.)

This is the extent of appellant's argument on the matter. Of course, appellant was not charged with attempted murder, she was charged with aggravated assault, which does not require a showing of specific intent to kill; also, as described thoroughly above, Webb suffered severe and permanent injuries. So, even appellant's one-sentence argument makes no

---

[3] *See Commonwealth v. Grohowski*, 980 A.2d 113, 115-116 (Pa.Super. 2009) ("[Pa.R.Crim.P.] Rule 704(B) is intended to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential. This Court has repeatedly held that 'we will not allow such motions as a 'substitute vehicle' for raising a matter that should be raised in a post-sentence motion.'"), quoting *Commonwealth v. Askew*, 907 A.2d 624, 627 (Pa.Super. 2006), *appeal denied*, 919 A.2d 954 (Pa. 2007) (citation omitted).

sense in context of the record. Appellant's complete failure to develop any meaningful argument on the matter would result in waiver, even if the issue were otherwise preserved for appeal. ***See Commonwealth v. Murchinson***, 899 A.2d 1159 (Pa.Super. 2006) (appellant failed to develop meaningful argument with specific reference to the record to support his claims on appeal that the evidence was insufficient to support his convictions and, thus, waived review of the claims, where appellant recited boilerplate law and then simply asserted that the evidence at trial fell short of such law); Pa.R.A.P. 2119(a).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2017